Howard T. Hogan, J.
This is an action by the owners and operators of the Capri Beach Club for a judgment declaring that their right to operate a beach club includes the right to conduct a recreational program for the children of its members and the right to use a certain designated portion of their property as an automobile parking area, and permanently enjoining the defendant from interfering with these aforesaid uses of their property.
The land in question consists of two rectangular parcels, each of approximately 16 acres, located in Atlantic Beach, one of which, designated as “ Parcel A ” in the complaint, is on the south side of Beach Boulevard and has a frontage of approximately 650 feet on the Atlantic Ocean and a depth of 1,000 feet. The other, designated as “ Parcel B ”, is on the north sicle of Beach Boulevard directly opposite Parcel A. Both lie in a “ Business District ” as defined in defendant’s Building Zone Ordinance. In 1950 defendant’s Town. Board granted to plaintiffs ’ predecessors in title a special exception under subdivision *1071 (e) of section X-1.14 of said ordinance to use the subject property as a “ Place of Amusement ”, and permission was given for the erection of 695 cabanas, 888 lockers, a beach club, administration building and 3 swimming pools on Parcel A, and for the use of Parcel B as an accessory parking area. Plans for the construction of these improvements thereupon were presented by plaintiffs, approved by the defendant’s building department, and thereafter the parcels were improved with 440 cabanas, 800 lockers, swimming pools, restaurants, a parking field, etc., at a cost in excess of $2,500,000. Operation of the beach club began in 1950.
Since 1951 supervision of the activities of the children of the members was offered on a voluntary basis, and since that time a staff of approximately 100 professional counselors or instructors employed by the plaintiff have guided the activities of the children and instructed them in various sports, arts and crafts. The erection of no new unauthorized structures was involved in these activities. Of the approximately 3,000 children of members, one half participate in this program, their parents paying a nominal fee of $40 for the season for a child between the ages of 4 and 12 years and $10 for teen-agers. In its advertisements plaintiffs’ have repeatedly characterized their service as a ‘ ■ Day Camp ”, The Club furnishes no transportation or meals for these children. Heretofore, a few children of nonmembers have been admitted to the program, but in 1957 an effort was made to exclude them. Plaintiffs contend, and it is not disputed, that the fees charged meet only a small fraction of the cost of the program.
Plaintiffs plead, in addition, that since 1950, they have used a concrete strip along the northeasterly portion of Parcel A, shown on the plan filed with the building inspector as one means of vehicular access to the beach and for parking of the automobiles of some of its members; this in addition to the large parking area authorized on Parcel B.
In 1956 the said ordinance was amended by repealing the aforesaid section X-1.14 and adding a new section Z-5.0, which provided that “ Day Camps ” and parking areas accessory to and on the same, plot as a permitted use, were allowed in business districts only when permitted by the Board of Appeals after a public hearing. The ordinance further provides (§ G-18.0) that a violation of its provisions constitutes a misdemeanor.
Thereafter, defendant’s building inspector filed a complaint in the District Court of Nassau County alleging that plaintiffs’ *1072 activities constituted the operation of a day camp, and a violation of the Building Zone Ordinance and that the use of the supplementary parking area on Parcel A, likewise constituted such a violation. These proceedings are still pending. Upon the filing of the complaint plaintiffs applied to the Board of Appeals in compliance with the aforesaid section Z-5.0, for permission to operate a day camp, and to continue to use the supplementary parking area, but, after a public hearing, their applications were denied in all respects. They then instituted the present action, based on the claims that their recreational program for the children of members is a legitimate appurtenant use of the beach club and does not constitute a “ Day Camp ” within the contemplation of the ordinance and that the use of the supplementary parking area is a legitimate and lawful part of the operation of the beach club and further, that it was included in the building permit issued in 1950.
An examination of the Building Zone Ordinance of the Town of Hempstead and its various amendments discloses no definition of “ Beach Clubs ” or “ Day Camps When the Town Board issued a permit for a beach club containing 695 cabanas and 888 lockers on premises consisting of 16 acres with 650 feet of beach front on the ocean, it placed no restriction upon the persons who might become members or the number of such persons other than to limit the accommodations as aforesaid. It could easily have been foreseen that in a club of this size, with a full membership the children of the members, if they averaged two per family, might be expected to number 3,000 or more. It must have been within the contemplation of the Town Board that these children would engage in normal childhood activities on the premises, such as games of ball, swimming, etc. No attempt was then made to limit or confine these activities.
It must be conceded that every supervised activity which according to defendant constitutes a day camp in the aggregate could properly be conducted by the children alone as part of the normal activities of a beach club. In the absence of any regulations to the contrary, they could play baseball, tennis and basketball, receive swimming lessons from their parents or older brothers or sisters and play other games on the premises as part of the normal activities of a beach club.
It is contended by the defendant that since 1956 section X-1.14 of the ordinance which bars day camps, except when permitted by the Board of Appeals, makes these same activities illegal when conducted under trained supervisors who organize the play and guide the activities of approximately one half the *1073 number of children of members. The power to impose zoning-restrictions has been conferred upon the Town of Hempstead for the express purpose of promoting the health, safety, morals or general welfare of the community (Town Law, § 261) lessening congestion in the streets, securing safety from fire, panic and other dangers, promoting health and general welfare, providing adequate light and air, preventing overcrowding of land and avoiding undue concentration of population, conserving the value of buildings and encouraging the most appropriate use of land (Town Law, § 263). Not one scintilla of evidence has been adduced to demonstrate that the banning of supervision will in any way advance these aims.
It is wholly conceivable that the introduction of a day camp into certain neighborhoods might have a disruptive effect, might depreciate values in the neighborhood, cause congestion and create problems involving health and safety. But here the facilities have been lawfully established already and the children are lawfully on the premises. It cannot be seriously contended that the addition of the factors of supervision and guidance will create or aggravate these problems. On the contrary, they tend to preserve order and discipline. There is nothing about the title “ Day Camp ” as used by the plaintiffs which make their present operation more objectionable than it would be if it Avere known and described solely as a beach club, so long as the operations in question are confined to the children of members. An arbitrary distinction such as the town seeks to impose has no reasonable relation to its power to zone, and hence is illegal and void.
As to the second cause of action, the court finds no evidence that the use for parking of the concrete strip shoAvn on the northeasterly side of Parcel A on plaintiffs’ exhibit 3, bearing the sole designation “ cone.”, was intended by the authority issuing the building permit. Since an adequate parking area of nearly 16 acres was directly across Beach Boulevard, there can be no presumption that it Avas necessary to the operation of the beach club and hence permitted by implication.
No nonconforming use was established by its use from 1950 until the adoption of section Z-5.0 of the Building Zone Ordinance, since it never had been authorized by the original permit for a beach club. That permit, read in conjunction with the plans approved by the building inspector, made provision for but one parking area, that on Parcel B.
Accordingly, the court concludes that the plaintiffs are entitled to judgment declaring that the plaintiffs ’ right to operate their *1074 beach club includes the right to conduct a supervised recreational program for the children of its members only, and perpetually enjoining and restraining the defendant, its agents and employees from interfering with the operation of said supervised recreational program.
Defendant is entitled to judgment dismissing the second cause of action.
The foregoing are the facts found by the court and constitute its decision as required by section 440 of the Civil Practice Act.
Settle judgment on notice.